UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL GARRISON,

      Plaintiff,

v.                                            Case No. 1:07-CV-642

DEB DUTCHER, et al.,                    HON. GORDON J. QUIST

      Defendants.
_____/

## OPINION ADOPTING IN PART AND REJECTING IN PART THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The Court has before it Plaintiff's objections to the Magistrate Judge's Report and Recommendation issued 14 August 2008, in which the magistrate judge recommended that:

A.     Defendants' motion for summary judgment (docket no. 36) be **GRANTED** as to defendants Deitrich, McQueary, Krick, Gaskill, Blount, Antes, Schneider, Deschaine, Gidley, and MDOC, and that these defendants be dismissed from this action;

B.     Defendants' motion for summary judgment (docket no. 36) be **GRANTED** as to defendant Dutcher with respect to Counts V and VI;

C.     Defendants' motion for summary judgment (docket no. 36) be **DENIED** as to defendant Dutcher with respect to the First Amendment claim raised in Count III;

D.     Defendants' motion to dismiss (docket no. 44) be **GRANTED** and that defendants Marble and CMS be dismissed from this action;

E.     Counts II, IV, V and VI be dismissed in their entirety; and

  F. Plaintiff's motion for summary judgment (docket no. 41) be **DENIED**.

The Court also has defendants Correctional Medical Services's (CMS) and Diana Marble's (Marble) response to Plaintiff's objections. The Court has conducted a de novo review of the report and recommendation pursuant to Fed. R. Civ. P. 72(b) and concludes it should be adopted in part and rejected in part. Plaintiff signed his complaint under penalty of perjury pursuant to 28 U.S.C. § 1746. Accordingly, the Court treated Plaintiff's verified complaint as an affidavit during its de novo review of the report and recommendation. *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).

Plaintiff has raised 13 objections to the report and recommendation.

### Objection 1

Plaintiff objects to the magistrate judge's recommendation that Plaintiff's motion for summary judgment be denied on the grounds that Plaintiff has not specified any basis upon which he is entitled to summary judgment. Plaintiff states that he is "seeking summary judgement because he is entitled to file a Cross Motion for Summary Judgement and is entitled to summary judgement as a matter of law on the several grounds set forth in his Brief." Plaintiff still fails to enumerate the legal and factual grounds he believes entitle him to summary judgment. Plaintiff's request for summary judgment is therefore denied.

### Objection 2

Plaintiff objects to the magistrate judge's recommendation that Defendant McQueary's motion for summary judgment be granted as to Count I on the grounds that Plaintiff has not exhausted the administrative remedies available to him vis-a-vis Defendant McQueary. Plaintiff argues that his failure to name McQueary as a responsible party in either grievance alleging deliberate indifference to his medical need for a bottom bunk (Grievances OTF-06-11-781-12i and

OTF-07-02-000-90-28a[1]) does not constitute a failure to exhaust. Plaintiff contends that his statement that he attempted to resolve the matter by "discuss[ing] it with my ARUS McQueary all to no avail" suffices and that MDOC Policy Directive 03.02.130, ¶ T bars extensive elaboration. While it is true that failure to name in a grievance an individual later sued does not constitute failure to exhaust *per se*, *Jones v. Bock*, 549 U.S. 199, 127 S.Ct. 910, 923 (2007)[2], "the prison's requirements . . . define the boundaries of proper exhaustion." *Id*. MDOC requires prisoners to include the "names of all those involved". MDOC Policy Directive 03.02.130, ¶ T[3]. Plaintiff's failure to name McQueary as a responsible party in his grievances thus constitutes failure to exhaust.

An inmate's procedural default may be cured if the prison "identif[ies] the unidentified persons and acknowledg[es] that they were fairly within the compass of the prisoner's grievance." *Spruill v. Gillis*, 372 F.3d 218, 234 (3rd Cir. 2004). Identification need not be by name; it may be through a description of the events and participants sufficient to notify prison officials of the problem so they may attempt to resolve it. *Jones*, 549 U.S. 199, 127 S.Ct. at 923. In *Spruill*, the prisoner's default was cured when the grievance officer identified the unnamed party in his Initial Response Review (IRR). *Spruill*, 372 F.3d at 234. The court excused the prison's failure to acknowledge that party's responsibility, reasoning that "it is not to be expected that a response rejecting Spruill's grievances on the merits would identify any malfeasance on Brown's part." *Id*. It sufficed for the *Spruill* court that the prison's grievance officer "recogni[zed] that Brown was involved in the events that Spruill complained of." *Id*.

---

[1] Docket nos. 37-16 and 37-17, respectively.

[2] Pinpoint cites for U.S. Reports are not currently available for this case.

[3] Docket no. 37-9, at 4-5.

The recognition of the identified party's involvement in the alleged incident is critical to the cure of the procedural default arising from the prisoner's failure to name the party in his grievance. The court in *Williams v. Beard*, 482 F.3d 637, 639-40 (3rd Cir. 2007), distinguished that case from *Spruill* because, although the grievance officer in *Williams* identified the unnamed individual in his IRR, he gave no indication that the identified individual was involved in the events complained of. The facts in the instant case are analogous to those in *Williams* and distinguishable from those in *Spruill*. Plaintiff mentioned McQueary in Grievance OTF-07-02-000-90-28a[4]. Plaintiff did not allege in the grievance, however, nor did the prison acknowledge, that McQueary was a party to the incident complained of. Plaintiff's procedural default is left uncured and constitutes a failure to exhaust. Defendant McQueary's motion for summary judgment is therefore granted as to Count I.

**Objection 3**

Plaintiff objects to the magistrate judge's recommendation that defendant Krick's motion for summary judgment be granted as to Count II on the grounds that Plaintiff neither named Krick nor attributed any wrongdoing to her in the grievances he filed. Count II avers that the delay in the delivery of his spiritual herbs violated the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42. U.S.C. § 2000cc-1 *et seq*. The analysis of this objection is similar to that of Plaintiff's second objection.

Plaintiff does not contend he identified Krick as a party to the misconduct alleged in Grievance OTF-07-01-47-19c[5]. Instead, he argues that he identified Krick, and specified her role in the incident, in his brief in support of his motion for summary judgment. (Docket no. 42). He also asserts she is liable for the misconduct of her subordinates, that her participation in a conspiracy to

---

[4] Docket no. 37-17, at 5.

[5] Docket no. 37-12.

4

deprive him of his First Amendment rights can be inferred from the circumstances, and that any procedural default was cured when he later identified Krick. Plaintiff's assertion that his failure to exhaust vis-a-vis Krick was excused by his later identification of her is inapt. Nowhere in the grievance or its accompanying responses is Krick alleged to be, or acknowledged as, involved in the events complained of. Thus, Plaintiff's procedural default is not cured, *Spruill*, 372 F.3d at 234; *Williams*, 482 F.3d at 639-40, and Plaintiff has failed to exhaust his administrative remedies vis-a-vis defendant Krick. *Jones*, 549 U.S. at 199, 127 S.Ct. at 923. The Court's finding that Plaintiff has failed to exhaust vis-a-vis defendant Krick is dispositive, and it need not examine Plaintiff's arguments that Krick is liable for her subordinates' misconduct, or that Krick's participation in an alleged conspiracy may be inferred from the circumstances. The Court accordingly grants defendant Krick's motion for summary judgment as to Count II.

**Objections 4 & 5**

Plaintiff objects to the magistrate judge's recommendation that defendant Blount be granted summary judgment as to Count IV and defendants Schneider, Gidley and Dutcher be granted summary judgment as to Count V on the grounds that Plaintiff failed to exhaust his administrative remedies vis-a-vis these defendants. The substance of Plaintiff's objections is the same as objections 2 and 3: Plaintiff contends he is not required to identify the individuals allegedly responsible for the violation of his constitutional and statutory rights, and if he is so required, any procedural infirmity has been alleviated. The Court rejects this argument for the reasons the Court rejected Plaintiff's second and third objections. Accordingly, the Court grants defendant Blount's motion for summary judgment with respect to Count IV. Defendants Schneider, Gidley and Dutcher are granted summary judgment with respect to Count V. Defendant Gidley is granted summary judgment as to Count VI.

**Objection 6**

Plaintiff objects to the magistrate judge's recommendation that MDOC be granted summary judgment as to Count IV on the grounds that it is shielded by Eleventh Amendment immunity. Plaintiff claims that "[u]nder RLUIPA a State waives Eleventh Amendment immunity by accepting federal funding." However, Count IV seeks to state a claim under 42 U.S.C. § 1983, not RLUIPA. Count IV cannot stand unless 42 U.S.C. § 1983 waived sovereign immunity. "[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100-102, 104 S.Ct. 900, 908-909 (1984). 42 U.S.C. § 1983 does not abrogate state sovereign immunity, *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 63-4, 109 S.Ct. 2304, 2308, and Michigan has not consented to suit under the statute. *Sassin v. Bergh*, 2008 WL 2511284, at *2 (W.D. Mich. 2008). Plaintiff has not stated a claim against MDOC upon which relief can be granted. Therefore, the Court will grant defendant MDOC's motion for summary judgment and dismiss MDOC from this action.

**Objection 7**

Plaintiff objects to the magistrate judge's recommendation that defendants Dutcher and Deschaine be granted summary judgment as to Count VI on the grounds that "[P]laintiff was not entitled to have the [Maxim] magazine . . . because it was classified as a restricted publication" and whether the magazine was rejected "for the wrong reason" is thus irrelevant. Plaintiff has not alleged that defendants Dutcher and Deschaine were responsible for adding the magazine to the list of restricted publications. Had Plaintiff so alleged, a material issue of fact would be before the Court: whether the magazine actually contains the objectionable content. Plaintiff, however, contests the decision to withhold the magazine, not the decision to classify it as restricted.

Defendants were justified in rejecting the magazine because it was classified as restricted, even if the decision to place it on the restricted list was not. Whether the magazine actually contains certain objectionable content is thus irrelevant. Accordingly, the Court grants summary judgment to defendants Dutcher and Deschaine as to Count VI.

**Objection 8**

Plaintiff objects to the magistrate judge's recommendation that the Court grant summary judgment to defendant McMillan on the grounds that Plaintiff cannot file an RLUIPA claim against McMillan in an individual capacity. The decisions on this question are varied. In *Agrawal v. Briley*, 2006 WL 3523750, at *11 (N.D.Ill. Dec.6, 2006), the district court concluded that "[i]f RLUIPA authorized only official-capacity claims, subsection (iii) [of 42 U.S.C. § 2000cc-5(4)(A)] would have no purpose because subsection (ii) already authorizes claims against government 'officials.'" *See also Daker v. Ferrero*, 2006 WL 346440, at *10 (N.D.Ga. July 31, 2006) (vacated in part on other grounds) (holding that the language of 42 U.S.C. § 2000cc-5(4)(A)(iii) is so similar to the language of 42 U.S.C. § 1983 that Congress apparently intended to included in the definition of "'government' . . . all . . . persons amenable to suit under § 1983- including . . . state officials in their individual capacities"). The Eleventh Circuit addressed whether RLUIPA permits individual-capacity claims against officials and concluded that, despite the apparent scope of subsection (iii), RLUIPA does not create a private right of action against defendants in their individual capacities because RLUIPA was enacted pursuant to Congress' Article I Spending Power, and "the Spending Power cannot be used to subject individual defendants, such as state employees, to individual liability in a private cause of action." *Smith v. Allen*, 502 F.3d 1255, 1274 (11th Cir. 2007). The Eleventh Circuit also considered decisions which determined individual-capacity suits could not be brought under Title IX and concluded that those courts had used identical reasoning to reach that conclusion in those cases. *Id*. at 1273. The District Court for the District of South Dakota has also

7

considered this issue and, after reviewing several decisions on the matter, concluded that Constitutional considerations bar individual-capacity claims under RLUIPA. *Sisney v. Reisch*, 533 F.Supp.2d 952, 967-68 (D.S.D. 2008).

The Court is persuaded by the reasoning of the Eleventh Circuit and concludes that RLUIPA does not authorize individual-capacity claims. Accordingly, the Court grants summary judgment to defendant McMillan as to Plaintiff's claim against him in an individual capacity in Count IV.

**Objection 9**

Plaintiff objects to the magistrate judge's recommendation that the Court grant defendant McMillan summary judgment with respect to Plaintiff's claim against him in an official capacity in Count II on the grounds that Plaintiff fails to raise a material issue of fact for trial and that the 71-day delay in the delivery of Plaintiff's spiritual herbs does not represent a government policy imposing a "substantial burden" on Plaintiff's "religious exercise." Plaintiff also maintains that the states waived their immunity from claims seeking money damages under RLUIPA.

The scope of any waiver of immunity under RLUIPA is an unsettled question of law, as is the nature of the remedies it provides. *Smith*, 502 F.3d at 1270; *Sisney*, 533 F.Supp.2d at 966-67. The Eleventh Circuit has held that Congress unambiguously conditioned a state's acceptance of federal funds to the waiver of that state's Eleventh Amendment immunity. *Benning v. Georgia*, 391 F.3d 1299, 1305-06 (11th Cir. 2004). It subsequently held that the "appropriate remedies" available under the act include money damages, and that the states had waived their immunity to suits seeking legal as well as equitable relief. *Smith*, 502 F.3d at 1276-77. The Eleventh Circuit reasoned that it is well-settled that "federal courts should presume the availability of all appropriate remedies" in the absence of an express contrary indication. *Id.* at 1270. The court did not explicitly analyze

whether the waiver of immunity covered suits seeking money damages[6], but held that it did. *Id.* at 1276.

The Fourth Circuit determined that "'appropriate relief' . . . might be read to include damages in some contexts" but held that it did not waive the states' immunity from suits seeking damages. *Madison v. Virginia*, 474 F.3d 118, 131-32 (4th Cir. 2006). The court predicated its analysis on the principle that a waiver of sovereign immunity must be construed strictly. *Id.* at 131. The Fourth Circuit stated that section 4(a) of the RLUIPA was "susceptible to more than one interpretation" and thus concluded that the statute lacked the "'unequivocal textual waiver' required to waive sovereign immunity for monetary relief." *Id.* (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 39, 112 S.Ct. 1011 (1992)). Finally, the court rejected the argument that even if RLUIPA does not waive sovereign immunity from claims seeking money damages, the Civil Rights Remedies Equalization Act of 1986, 42 U.S.C. § 2000d-7 ("Equalization Act"), does. The Fourth Circuit acknowledged that the Equalization Act waived immunity[7] from suits seeking damages[8], but reasoned that the provision "any other Federal statute prohibiting discrimination by recipients of Federal financial assistance" did not include RLUIPA because RLUIPA did not prohibit

---

[6] The Eleventh Circuit's implied reasoning appears to be that the explicit establishment of "appropriate remedies" vis-a-vis the state necessarily waived the state's immunity to suits seeking those "appropriate remedies."

[7] 42 U.S.C. § 2000d-7(a)(1), which states, "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973 [29 U.S.C.A. § 794], title IX of the Education Amendments of 1972 [20 U.S.C.A. § 1681 et seq.], the Age Discrimination Act of 1975 [42 U.S.C.A. § 6101 et seq.], title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance."

[8] 42 U.S.C. § 2000d-7(a)(2), which states, "In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State."

discrimination. *Madison*, 474 F.3d at 132-33. Nevertheless, for purposes of summary judgment this Court will assume that money damages are available against the state under RLUIPA.

Plaintiff bears the burden of demonstrating that his "religious exercise has been burdened and that the burden is substantial." *Spratt v. Rhode Island Dep't Of Corrs.*, 482 F.3d 33, 38 (1st Cir. 2007). The Sixth Circuit has not defined "substantial burden" under RLUIPA. Two sponsors of RLUIPA discussed the definition of "substantial burden" in a Joint Statement that appeared in the Congressional Record. According to the Joint Statement, "[substantial burden] as used in the Act should be interpreted by reference to Supreme Court jurisprudence. Nothing in the Act . . . is intended to change that principle." *Washington v. Klem*, 497 F.3d 272, 278 (3rd Cir. 2007) (quoting 146 Cong. Rec. S7774, 7776 (July 27, 2000)). The Third Circuit considered the Supreme Court's construction of "substantial burden" in *Sherbert v. Verner*, 374 U.S. 398, 404, 83 S.Ct. 1790, 1795 (1963) and *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 717-18, 101 S.Ct. 1425, 1431-32 (1981) and concluded:

> a "substantial burden" exists where: 1) a follower is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning one of the precepts of his religion in order to receive a benefit; OR 2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs.

*Klem*, 497 F.3d at 280. The Seventh Circuit also recognizes that Congress intended "substantial burden" to be interpreted in accord with "the Supreme Court's articulation of the concept." *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003). They held that, in the context of land use regulation, a "substantial burden . . . is one that . . . render[s] religious exercise . . . effectively impracticable." *Id*. The Ninth Circuit determined that a "substantial burden" under RLUIPA is a "significantly great restriction or onus" on religious exercise. *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) (internal quotation

marks omitted). These interpretations, while not identical, are congruous. This Court holds that a substantial burden under RLUIPA in the context of institutionalized persons occurs where the government, by act or omission, renders impracticable, significantly restricts, or forecloses one's religious exercise, or puts substantial pressure on an individual to modify his behavior in violation of his religious beliefs.

The Court must also determine the *mens rea* required to give rise to an RLUIPA claim. The Fourth Circuit, in addressing this question, noted that "[a]lthough RLUIPA itself contains no state-of-mind standard, a fault requirement consistent with Congress's purpose must be incorporated from customary tort principles." *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006). This Court agrees. The Fourth Circuit found that constitutional considerations significantly impacted "the landscape of liability for prison officials." *Id*. That court declined to adopt a negligence standard for liability under RLUIPA, in part, because "'the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold' of constitutional protections." *Id*. (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49, 118 S.Ct. 1708, 1717-18 (1998)). The Fourth Circuit also concluded that "[a]doption of the negligence standard would open prison officials to unprecedented liability" and undermine "'due deference to the experience and expertise of prison and jail administrators.'" *Lovelace*, 472 F.3d at 194 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 723, 125 S.Ct. 2113, 2123 (2005)).

The Fourth Circuit reviewed decisions examining the scope of the Free Exercise Clause and reasoned that "RLUIPA at least reaches intentional conduct because that is what the Free Exercise Clause reaches." *Id*. The court declined to address whether "RLUIPA reaches beyond the Free Exercise Clause to prohibit conduct, such as deliberate indifference, that is less than intentional but more than negligent", but recognized that Congress passed RLUIPA to afford institutionalized persons greater protection of religious exercise than the Constitution. *Id*. The question is whether

11

Congress intended that greater protection to lower the plaintiff's burden of production, raise the government's, or both. Congress passed RLUIPA to reestablish the application of strict scrutiny to governmental interference with religious exercise after the Supreme Court held that laws of general applicability that incidentally burden religious exercise need only satisfy the rational basis test to pass Constitutional muster in *Employment Div. v. Smith*, 494 U.S. 872, 890 110 S.Ct. 1595, 1606 (1990), and held the Religious Freedom Protection Act unconstitutional as applied to the states in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157 (1997). The Fourth Circuit noted in *Lovelace* that "[i]n addition to prescribing strict scrutiny, Congress mandated that RLUIPA be construed 'in favor of broad protection of religious exercise.'" 472 F.3d at 186 (quoting 42 U.S.C. § 2000cc-3(g)). This dictum implies the Act's impact is not limited to the re-application of strict scrutiny. This Court does not conclude, however, that any such additional impact the Act may have affects the plaintiff's burden of production. Congress indicated that the "substantial burden" the plaintiff must demonstrate as part of his *prima facie* case is to be interpreted in accordance with existing jurisprudential standards. 146 Cong. Rec. at S7776. Not only is there no evidence in the legislative history that Congress intended to broaden the scope of prohibited activity, the legislative history reveals that Congress did not intend "substantial burden" to sweep more or less broadly under RLUIPA than it does under the extant standards established by the Supreme Court. Congress' express statement that they intended no change in the interpretation of "substantial burden", coupled with RLUIPA's silence on the requisite mental state and its language stating "[n]o government shall impose a substantial burden," indicate that Congress intended RLUIPA to reach only intentional conduct, just as does the Free Exercise Clause of the First Amendment. *See Shaheed v. Winston*, 885 F.Supp. 861, 868 (E.D.Va. 1995).

In light of the following, the Court finds that Plaintiff has offered evidence sufficient to survive defendant McMillan's motion for summary judgment as to Plaintiff's official-capacity claim

against him in Count II. In his sworn complaint, Plaintiff states that he kited the property room officer and chaplain on 9 Jan. 2007 to find out why he had not received the spiritual herbs he had ordered over a month before, but received no response. (Docket no. 1 at 6.) Several days later he filed a grievance after he learned that his order was shipped approximately three weeks earlier. Plaintiff spoke to Deputy Warden Krick about the matter on 29 Jan. 2007, and he claims that she told him she spoke to defendant McMillan about the spiritual herbs and that they had not arrived. *Id*. at 7. Plaintiff learned from UPS that his package was delivered to the prison on 22 Dec. 2006. *Id*. On 5 Feb. 2007 he filed a step-2 grievance and provided the UPS tracking number for the package. *Id*. On 15 Feb. 2007 Deputy Warden Trierweiler responded to his step-2 grievance and wrote that Plaintiff's spiritual herbs had been located in defendant McMillan's office and that he instructed McMillan to promptly deliver them to Plaintiff. *Id*. at 7-8. On 19 Feb. 2007 he filed a step-3 grievance. *Id*. at 8. Plaintiff alleges that he spoke to McMillan a few days later and saw the package sitting on McMillan's desk. He claims he asked for the package at that time, but McMillan told him it would have to be given to the chaplain first. *Id*. He finally received the item on 3 Mar. 2007. *Id*. The Court finds that the evidence Plaintiff proffered in his verified complaint, particularly the length of the delay and the persistent notice they received from Plaintiff, is sufficient to support a reasonable jury's inference that the delay in the delivery of Plaintiff's spiritual herbs was intentional rather than the result of mere negligence. Plaintiff has raised a material issue of fact. Consequently, defendant McMillan's motion for summary judgment as to Plaintiff's official-capacity First Amendment and RLUIPA claims in Count II is denied.

### Objection 10

Plaintiff objects to the magistrate judge's recommendation that defendant Antes's motion for summary judgment be granted on the grounds that he properly upheld the rejection of Plaintiff's Bible. MDOC requires books be sent directly from the publisher or an authorized vendor, and

Dolores Press, Inc. is neither the publisher of the book nor an authorized vendor. MDOC Policy Directive 05.03.118[9]. The Court finds that Defendants' justification for this policy - namely, to ensure books are not used to smuggle contraband - is in furtherance of a compelling governmental interest and that this policy is the least restrictive means of furthering that interest. Furthermore, the policy places no burden on Plaintiff's religious exercise because Plaintiff is able to receive Bibles from numerous publishers or authorized vendors. Accordingly, defendant Antes's motion for summary judgment as to Count V is granted and Count V is dismissed.

**Objections 11, 12 & 13**

Plaintiff objects to the magistrate judge's recommendation that defendants Dietrich and Marble be granted summary judgment as to Count I and defendants Marble, CMS and Gaskill be granted summary judgment as to Count IV. Plaintiff has not alleged a claim for deliberate indifference as to his need for a bottom bunk or the treatment of his sinusitis. There is no evidence that Defendants consciously disregarded a serious risk to Plaintiff's health or safety; at most, Plaintiff and Defendants disagreed on the appropriate treatments for Plaintiff's hernia and sinusitis. A disagreement over treatment does not give rise to a constitutional violation for the reasons the magistrate judge put forth in his Report and Recommendation. The Court grants summary judgment to defendants Marble and Dietrich as to Count I and defendants Marble, CMS and Gaskill as to Count IV.

The Court rejects all but the 9th of Plaintiff's objections for the foregoing reasons.

A separate order will be issued.

Dated:  September 30, 2008                    /s/ Gordon J. Quist
                                              GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE

---

[9] Docket no. 37-9 at 8, 14-15.