UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GARRISON,

        Plaintiff,

Case No. 1:07-cv-642

Hon. Gordon J. Quist

v.

DEB DUTCHER, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff's amended complaint contained six counts directed at 15 defendants. The court dismissed all of plaintiff's claims except for Count III directed at mailroom supervisor Deb Dutcher (First Amendment claim) and Count II directed at James McMillan in his official capacity as a Michigan Department of Corrections ("MDOC") Inspector (First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq.* claims). *See* Opinion and Order (Sept. 30, 2008) (docket nos. 59 and 60). This matter is now before the court on plaintiff's motion for summary judgment on these remaining claims (docket no. 64).

**I.**    **Legal standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws

of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).

"In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## II. Plaintiff's claims against Inspector McMillan

In Count II, plaintiff alleged that Inspector McMillan delayed his receipt of a mail order for spiritual herbs from an outside vendor. In the present motion, plaintiff contends that "[i]t

is undisputed that the Plaintiff's exercise of his religion was burdened in this matter by Defendant McMillan's actions." Plaintiff's Brief at 2. Given this purported "undisputed" fact, plaintiff contends that the evidentiary burden shifts to Inspector McMillan to demonstrate that the "unreasonable burden" on the exercise of his religion was justified. *Id.* at 2-3. Plaintiff further contends that Inspector McMillan's unspecified "conclusory statements" are not sufficient to defeat either his First Amendment claim or his RLUIPA claim. *Id.* at 3.

Plaintiff's claim is without merit. In ruling on defendants' motion for summary judgment, the court found that Inspector McMillan would be liable under the Free Exercise Clause of the First Amendment and RLUIPA only if he engaged in intentional conduct. *See* Opinion (Sept. 30, 2008) at p. 12. The court denied McMillan's motion for summary judgment after finding that a material issue of fact existed as to whether the delay in the delivery of plaintiff's spiritual herbs was intentional rather than the result of mere negligence. *Id.* at pp. 12-13. Plaintiff has presented no evidence with his motion to resolve this material issue of fact. Accordingly, plaintiff's motion for summary judgment as to Inspector McMillan should be denied.

### III. Plaintiff's claims against mailroom supervisor Dutcher

In Count III, plaintiff alleged that Ms. Dutcher violated his "right to Receive Mail as guaranteed by the First Amendment," because certain "pen pal lists" were destroyed by the prison mail room. This court denied Ms. Dutcher's motion for summary judgment with respect to Count III, stating in pertinent part as follows:

#### A. Legal standard

"A prisoner's right to receive mail is protected by the First Amendment." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). However, this right "is subject to prison policies and regulations that are reasonably related to legitimate penological interests, such as security, good order, or discipline of the institution."

3

*Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Courts generally afford great deference to prison policies, regulations, and practices relating to the preservation of these interests." *Id.* Courts consider several factors in determining whether a prison policy is reasonably related to a legitimate penological factor, including:

> (1) whether there is a valid, rational connection between the prison policy and the legitimate governmental interest asserted to justify it; (2) the existence of alternative means for inmates to exercise their constitutional rights; (3) the impact that accommodation of these constitutional rights may have on other guards and inmates, and on the allocation of prison resources; and (4) the absence of ready alternatives as evidence of the reasonableness of the regulation.

*Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992) (*citing Turner v. Safley*, 482 U.S. 78 (1987).

### B. Pen pal lists (Count III)

Plaintiff alleges that on or about February 9, 2007, he kited the mailroom to inquire about the location of two "pen pal publications" that had been sent to him from Kelch Enterprises. Amend. Compl. at ¶ 24. After he filed a grievance, plaintiff was called out for an interview by defendant Dutcher, the mailroom supervisor. *Id.* at ¶ 26. Dutcher advised plaintiff that she had destroyed the publications because she considered them "catalogs" not from a vendor and that she would destroy future pen pal publications. *Id.* at ¶¶ 26-28. Plaintiff alleges that his "pen pal publications" were erroneously referred to as "catalogs" throughout the grievance process, "merely because they included pricing information." *Id.* at ¶ 29-32.

MDOC Policy Directive 05.03.118(Z) provides in pertinent part that "[u]nauthorized catalogs may be discarded upon receipt by the facility without notice to the prisoner." The issue in this case is whether the pen pal publications are unauthorized catalogs. In their brief, defendants state that a pen pal publication "was rejected because it contained pricing information," that it was "a catalog that is prohibited by MDOC policy," and that the MDOC's restriction on catalogs is reasonably related to legitimate penological interests. Defendants' brief at 15. However, defendants have provided no affidavit or evidence to establish that the pen pal publications met the definition of an unauthorized catalog under Policy Directive 05.03.118(Z). Defendant Dutcher has provided no basis for a grant of summary judgment on this issue. Accordingly, her motion for summary judgment should be denied as to Count III.

Report and Recommendation (Aug. 14, 2008) (docket no. 55).[1]

Plaintiff has now provided this court with a document that he identifies as "2 Pages of Kelch Pen-Pal Publications." *See* document 65-2. Plaintiff contends that, as alleged in his verified complaint, defendant Dutcher admitted that she knew that this pen-pal publication was not a "catalog." Plaintiff's Brief at p. 1. These allegation are as follows:

> 28. Defendant Dutcher then stated that she was going to continue to destroy any pen pal publications that the Plaintiff received through the mail even if they were not really catalogs and tell her other mailroom employees to do the same, and that if Plaintiff did not agree with her that he could go to step-2 on his grievance.
>
> 29. On March 6, 2007, the Plaintiff filed a step-2 grievance again pointing out that his pen pal lists were not 'catalogs' and that Defendant Dutcher knew and verbally admitted that she knew they were not.

*See* docket no. 1. In his brief, however, plaintiff admits that the pen pal publication has a separate page with pricing information which could be construed as a catalog:

> Even assuming, arguendo that the separate 1 page pricing information could somehow be construed as a retail or wholesale 'catalog' it would still be an allowable 'catalog' because it provides pricing information for pen-pal publications which are allowed to be received and possessed by prisoners.

Plaintiff's Brief at p. 1.

In her response, Dutcher states that defendants considered the publication to be a catalog to be in violation of prison policy, citing the grievance responses addressing the issue. *See* docket no. 37-14. In addition, Dutcher contends that even if the pen pal lists were not catalogs, plaintiff was prohibited from possessing them because prison policy prohibits prisoners from paying to join pen pal organizations and purchase pen pal lists. *See* Michigan Department of Corrections

---

[1] The district court adopted this portion of the report and recommendation. *See* Opinion and Order (Sept. 30, 2008).

(MDOC), Policy Directive 04.02.105(V)(7) (effective Dec. 1, 2004) (stating that prisoner funds "shall not be used to join pen pal organizations or purchase pen pal lists, to establish or maintain internet web sites or to place any advertisement").[2] The record reflects that on March 16, 2007, plaintiff received a $30.00 refund for the pen pal lists after they were rejected. *See* docket no. 37-5. The inference to be drawn from the record is that plaintiff paid for the lists, the mailroom rejected the lists pursuant to the one or more policy directives, and plaintiff received a refund. Viewing the evidence in the light most favorable to the non-movant, the court concludes that genuine issue of material fact exists regarding the circumstances surrounding the rejection of the pen pal lists. Accordingly, plaintiff's motion for summary judgment as to Ms. Dutcher should be denied.

### IV.    Recommendation

For the reasons set forth above, I respectfully recommend that plaintiff's motion for summary judgment (docket no. 64) be **DENIED**.


Dated:  June 29, 2009                          /s/ Hugh W. Brenneman, Jr.
                                               HUGH W. BRENNEMAN, JR.
                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

---

[2] Defendants' brief erroneously cited the current version of the policy directive, 04.02.105(X)(7) (effective October 20, 2008).