UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GARRISON,

    Plaintiff,

v.

DEB DUTCHER, *et al.*,

    Defendants.

Case No. 1:07-cv-642

Hon. Gordon J. Quist

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a former state prisoner[1] pursuant to 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 *et seq*. This matter is now before the court on a motion for summary judgment filed by defendants Deborah Dutcher and James McMillan (docket no. 88).

**I.    Background**

Plaintiff's complaint included six counts. The court previously dismissed all claims asserted by plaintiff except for the following: In Count II, plaintiff alleged that Inspector McMillan violated his "right to Freedom of Religion as guaranteed by the First Amendment" and RLUIPA when McMillan delayed plaintiff's receipt of a mail order for spiritual herbs from an outside vendor ("Crazy Crow"). Plaintiff's First Amendment and RLUIPA claims asserted against Inspector McMillan in his official capacity survived defendants' first motion for summary judgment. *See* Opinion and Order (docket nos. 59 and 60).

---

[1] The record reflects that plaintiff was paroled after filing this action. *See* docket nos. 95 and 96.

In Count III, plaintiff alleged that mailroom supervisor Dutcher violated his "right to Receive Mail as guaranteed by the First Amendment." This claim arises from the destruction of certain "pen pal lists" (sometimes referred to as "pen pal publications") by the prison mail room. Plaintiff's First Amendment claim against Ms. Dutcher also survived defendants' first motion for summary judgment. *Id.*

**II.     Legal Standard**

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

This is defendants' second motion for summary judgment.[2]  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for

---

[2] Plaintiff did not file a timely response to defendants' motion for summary judgment. However, the court has construed plaintiff's motion to strike (docket no. 92) as his response. *See* Order (docket no. 98).

summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### III. Claims against Inspector McMillan

#### A. RLUIPA claim (Count II)

Inspector McMillan has moved for summary judgment on plaintiff's claim that he violated the First Amendment and RLUIPA by withholding the spiritual herbs. RLUIPA prevents the government from placing a burden on prisoner's religious exercise, providing in pertinent part that:

> (a) No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person--
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1.

Section 3 of RLUIPA (42 U.S.C. § 2000cc-2) allows individuals to file actions under the statute as follows,"[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* at § 2000cc-2(a). For purposes of a claim brought under § 2000cc-2(a), the term "government" is defined as: "(i) a State, county, municipality, or other governmental entity created under the authority of a State; (ii) any

branch, department, agency, instrumentality, or official of an entity listed in clause (i); and (iii) any other person acting under color of State law. . ." *Id.* at § 2000cc-5

Inspector McMillan seeks summary judgment based upon the recent decision in *Cardinal v. Metrish*, 564 F.3d 794, 799-801 (6th Cir. 2009), which held that the prisoner plaintiff's RLUIPA claim seeking money damages from the defendant prison warden was barred by the Eleventh Amendment. *See Cardinal*, 564 F.3d at 798-801. The Sixth Circuit rejected the prisoner's claim that the State of Michigan waived immunity when it accepted federal funds for its prisons. *Id.* After observing that the Supreme Court has not ruled on the issue, the Court agreed with the reasoning of the Fourth and Fifth Circuits[3] that waivers of sovereign immunity must be "unequivocally expressed," and that because RLUIPA's "appropriate relief" language in § 2000cc-2(a) does not clearly and unequivocally indicate that the waiver extends to monetary damages, the Eleventh Amendment barred the plaintiff's claim against the warden. *Id.* at 801. For this same reason, the court agrees with defendant that plaintiff's RLUIPA claim for monetary damages against Inspector McMillan in his official capacity should be denied. Furthermore, plaintiff's claim for any declaratory or injunctive relief under RLUIPA is moot, because plaintiff is no longer incarcerated at the facility. *See id.* at 798-99 (prisoner's claim for injunctive and declaratory relief is mooted by his transfer to a new facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same). Accordingly, Inspector McMillan's motion for summary judgment on the remaining RLUIPA claim alleged in Count II should be granted.

---

[3] *See Madison v. Virginia*, 474 F.3d 118 (4th Cir. 2006) and *Sossamaon v. Lone Star State of Texas*, 560 F.3d 316 (5th Cir. 2009).

### B. First Amendment claim (Count II)

Inspector McMillan seeks summary judgment on plaintiff's First Amendment "official capacity" claim arising from the late delivery of the spiritual herbs. Plaintiff's First Amendment claim brought against Inspector McMillan in his official capacity is also barred by Eleventh Amendment immunity. *See Will v. Department of State Police*, 491 U.S. 58, 64-71 (1989) (plaintiff's § 1983 claims for monetary damages against the defendants in their official capacities are barred by Eleventh Amendment immunity); *Rodgers v. Banks*, 344 F.3d 587, 594 (6th Cir. 2003) ("the Eleventh Amendment bars § 1983 suits seeking money damages against states and against state employees sued in their official capacities"). In addition, plaintiff's First Amendment claims for injunctive or declaratory relief are moot because he is no longer incarcerated at the facility. *See Cardinal*, 564 F.3d at 798-99; *Kensu*, 87 F.3d at 175. Inspector McMillan is also entitled to summary judgment on plaintiff's First Amendment claim.

### IV. First Amendment claim against Ms. Dutcher (Count III)

Ms. Dutcher seeks summary judgment on plaintiff's claims that she violated his First Amendment right to receive mail by rejecting the "pen pal lists." In his verified complaint, plaintiff alleged that on or about February 9, 2007, he kited the mailroom to inquire about the location of two "pen pal publications" that had been sent to him from Kelch Enterprises. Amend. Compl. at ¶ 24. After he filed a grievance, plaintiff was called out for an interview by defendant Dutcher, the mailroom supervisor. *Id.* at ¶ 26. Dutcher advised plaintiff that she destroyed the publications because she considered them " 'catalogs' not from a vendor" and that she would destroy future pen pal publications. *Id.* at ¶¶ 26-28. Plaintiff alleged that his "pen pal publications" were erroneously referred to as "catalogs" throughout the grievance process. *Id.* at ¶¶ 29-32.

5

Plaintiff's grievance against Ms. Dutcher for destroying the pen pal lists was denied because Kelch Enterprises was not an approved vendor and because prisoner funds cannot be used to purchase pen pal lists. *See* Grievance OTF-07-02-00126-15f (docket no. 37-14). The grievance response from Ms. Dutcher characterized the pen pal lists as unauthorized catalogs which could be discarded upon receipt by the facility without notice to the prisoner pursuant to Michigan Department of Corrections (MDOC) Policy Directive 05.03.118 ¶ Z (effective Jan. 1, 2006), which provides in pertinent part that "[u]nauthorized catalogs may be discarded upon receipt by the facility without notice to the prisoner." The response further states that

> Kelch Enterprises is not an approved vendor of this facility and is not a catalog for publications. The mailing contains materials for ordering (provides pricing information).

*Id.* In the Step II appeal, plaintiff objected to the characterization of the pen pal lists as catalogs, stating that "indeed someone with a 6th grade education would know a pen pal list has nothing to do with a catalog." *Id.* Deputy Warden Gridley denied plaintiff's Step II appeal, reiterating that the publication was an unauthorized catalog and that Kelch Enterprises was not an approved vendor or publisher. *Id.* In the Step III appeal, plaintiff objected stating "it is undisputed that my mail has nothing to do with a 'catalog'." *Id.* The MDOC rejected the Step III appeal, stating that "[t]he publications in question offer pricing information for ordering and as such were handled as unauthorized catalogs," and that Policy Directive 04.02.105 ¶ V 7 (effective Dec. 1, 2004) states that prisoner funds "shall not be used to join pen pal organizations or purchase pen pal lists. . ." *Id.*

"A prisoner's right to receive mail is protected by the First Amendment." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003). However, this right "is subject to prison policies and regulations that are reasonably related to legitimate penological interests, such as security, good

6

order, or discipline of the institution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Plaintiff does not contest that the applicable MDOC policy directives are reasonably related to legitimate penological interests. Rather, plaintiff contends that Ms. Dutcher improperly rejected the pen pal lists as catalogs. In her first motion for summary judgment, Ms. Dutcher asserted that the pen pal publication "was rejected because it contained pricing information," that it was "a catalog that is prohibited by MDOC policy," and that the MDOC's restriction on catalogs is reasonably related to legitimate penological interests. The court denied Ms. Dutcher's motion because she provided no evidence to establish that the pen pal publications met the definition of an unauthorized catalog under Policy Directive 05.03.118 ¶ Z. *See* Report and Recommendation at 17 (docket no. 55).

Now, defendants have submitted additional evidence and authority to demonstrate that Ms. Dutcher could properly reject the pen pal lists. At his deposition, plaintiff testified that Kelch Enterprises provides "little brochures with prices on them" from which prisoners can order "big lists" or "small lists" of pen pals. Garrison Dep. at 43 (docket no. 89-4). The lists, which contains names, pictures, and addresses of women, included various categories (e.g., prisoners and geographical locations). *Id.* at 43-44. The large list costs $20 to $30 and has about four pages of pictures and three or four pages of addresses on the back. *Id.* at 44.

In her affidavit, Ms. Dutcher stated that Kelch Enterprises is not an approved prison vendor. Deborah Dutcher Aff. at ¶ 3. While Policy Directive 05.03.118 ¶ Z prohibits the receipt of "unauthorized catalogs," the policy directive does not define the term "catalog." *Id.* at ¶ 4. Ms. Dutcher considered the pen pal lists "catalogs" based upon the dictionary definition of a catalog, which includes "a list of articles for sale" or "a book or pamphlet containing such a list." *Id.*, citing

7

MacMillan, *Webster's New World College Dictionary*, page 220 (3rd ed. 1996). Ms. Dutcher further states that since catalogs are prohibited by prison policy, "items ordered from prohibited catalogs are necessarily prohibited as well, as they did not come from an approved vendor." *Id.* at ¶ 5. In addition, defendants point out that prisoners are explicitly prohibited from spending money on pen-pal lists. *See* Policy Directive 04.02.105 ¶ V 7.

Plaintiff's testimony referred to two different items: the pamphlet from Kelch Enterprises which contained a price list for the pen pal lists; and the pen pal lists themselves which included the names, addresses and pictures of the "pen pals." While the grievance responses refer to the *pen pal lists* as including pricing information, this conclusion is contradicted by plaintiff's testimony that the price list is set forth in the *pamphlet*. Plaintiff's position is that Ms. Dutcher wrongly characterized the pen pal lists as a catalog, and then rejected the pen pal lists on that basis. Assuming that plaintiff's version of the facts is true, and that the pen pal lists did not include pricing information, the court nevertheless concludes that Ms. Dutcher did not violate plaintiff's First Amendment rights when she treated the pen pal lists as "catalogs" under Policy Directive 05.03.118 ¶ Z.

Where a statute or regulation does not define a term, the court looks to the ordinary meaning of the term. *See Asgrow Seed Co. v. Winterboer*, 513 U.S. 179, 187 (1995) ("[w]hen terms used in a statute are undefined, we give them their ordinary meaning); *Sierra Club v. U.S. E.P.A.*, 557 F.3d 401, 406 (6th Cir. 2009) (referring to dictionary definition to determine meaning of term not defined in the relevant statute and regulation). Here, Ms. Dutcher observed that one dictionary defined the term "catalog" as "a list of articles for sale." However, the term "catalog" has a more expansive meaning. For example, a catalog also means " a list, usually in alphabetical order, with

brief notes on the names, articles, etc. listed," or "a book, leaflet, or file containing such a list or record." *The Random House Dictionary of the English Language* at p. 231 (1973). Other definitions of the word "catalog" include: "a detailed enumeration;" "a group of similar or related things often standing or succeeding in order," "a complete enumeration of items (as of books for sale or courses of instruction in a college) arranged systematically in a pamphlet or book often alphabetically and with descriptive detail (as of price or content) accompanying each item," and "a pamphlet or book that contains such a list often with other related matter." *Webster's Third New International Dictionary, Unabridged* (Merriam-Webster, 2002) (http://unabridged.merriam-webster.com ).

Here, plaintiff testified that the pen pal lists included a category of pen pals, with their names, photographs and addresses. Even if the pen pal lists did not include a price, the lists described by plaintiff fit definitions of a "catalog" listed above. In addition, the record reflects that during the grievance process, at least three different MDOC employees considered the undefined term "catalog" to include pen pal lists in the context of Policy Directive 05.03.118 ¶ Z. *See generally, Riegel v. Medtronic, Inc.*, 552 U.S. 312, 328 (2008) ("[t]he agency's reading of its own rule is entitled to substantial deference"); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) ("[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security"). Furthermore, even if the pen pal lists were not characterized as catalogs, Policy Directive 04.02.105 ¶ V 7 explicitly prohibited plaintiff from using his prisoner funds to purchase pen pal lists. Plaintiff had no right to possess pen pal lists purchased in violation of prison policy. Accordingly, Ms. Dutcher's motion for summary judgment should be granted.

9

## V. Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion for summary judgment (docket no. 88) be **GRANTED** and that this case be dismissed.

Dated:  March 22, 2010                                      /s/ Hugh W. Brenneman, Jr.
                                                            HUGH W. BRENNEMAN, JR.
                                                            United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).